## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CLAYTON HARRELL, by and through his Next
Friend, Connie Harrell, and AUSTIN TRUEBLOOD,
by and through his guardian, Suzanne Trueblood, on
behalf of themselves and all others similarly situated,

      Plaintiffs,

v.                                              Case No.:

CHAD POPPELL, in his official capacity as Secretary
for the FLORIDA DEPARTMENT OF CHILDREN
AND FAMILIES, and MARY MAYHEW, in her
official capacity as Secretary for the FLORIDA
AGENCY FOR HEALTH CARE
ADMINISTRATION,

      Defendants.
_____/

## CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### I.    PRELIMINARY STATEMENT

1.    Plaintiffs Austin Trueblood and Clayton Harrell bring this action against the

Florida Department of Children and Families ("DCF") and the Florida Agency for Healthcare

Administration ("AHCA"), which are responsible for *ex parte* reviews of Medicaid-eligible

individuals—a process requiring Defendants to determine whether an individual is eligible for

any other category of Medicaid prior to terminating their Medicaid coverage and, where

applicable, continue the individual's Medicaid eligibility in a new category without interruption.

2.    Plaintiffs and a proposed class of similarly situated individuals have been harmed

by Defendants' system-wide failure to conduct *ex parte* reviews and to provide sufficient notice

of termination of their Medicaid coverage in accordance with federal Medicaid law and the

Fourteenth Amendment to the United States Constitution.

3.     More specifically, Defendants have established a policy and practice of managing certain individuals' Medicaid eligibility through an outside agency or system, like the Social Security Administration (SSA) or Florida Safe Families Network (FSFN).  When those outside systems enter information ending an individual's eligibility for the Medicaid category, Defendants consistently fail to conduct a timely *ex parte* review within their own system (operated by DCF) to determine whether the individual qualifies for any other category of Medicaid.

4.     Defendants' failure to effectively and efficiently conduct *ex parte* determinations of Medicaid eligible consumers whose Medicaid eligibility was previously maintained within the SSA or FSFN system results in a devastating loss of health coverage without legally sufficient pre-termination notice and opportunity to challenge that loss.  This coverage loss causes a significant interruption in continuity in care to children and persons with disabilities.

5.     This action seeks to remedy Defendants' pattern and practice of terminating Medicaid benefits for individuals whose coverage would continue if Defendants abided by their obligations to conduct a timely *ex parte* review and provide notice and opportunity to be heard as required by federal Medicaid law and the Fourteenth Amendment to the United States Constitution.

6.     Plaintiffs further request that the Court: certify this matter as a class action; declare that Defendants' systemic failure to provide *ex parte* Medicaid reviews violates the federal Medicaid statute and the Due Process Clause of the Fourteenth Amendment; and grant a permanent injunction requiring Defendants to cease their illegal pattern and practice and to reinstate Medicaid coverage to all affected class members until Defendants have properly re-

determined the class members' Medicaid eligibility under all categories and issued adequate and timely notice of such determinations.

## II. JURISDICTION

7.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, which provides for original jurisdiction over all civil suits involving questions of federal law, and 28 U.S.C. §§ 1343(3) and (4), which grant this Court original jurisdiction in all actions authorized by 42 U.S.C. § 1983 to redress the deprivation under color of State law of any rights, privileges, or immunities guaranteed by the U.S. Constitution and Acts of Congress.

8.      Plaintiffs seek declaratory, injunctive and other appropriate relief, pursuant to 28 U.S.C. §§ 2201 and 2202; Fed. R. Civ. P. 23, 57, and 65; 42 U.S.C. § 1983; and the Fourteenth Amendment to the U.S. Constitution.

9.      Pursuant to 28 U.S.C. § 1391(b), venue is proper as Plaintiff Harrell resides in this district and a substantial part of the events or omissions giving rise to the claim also occurred in the district.

## III. PARTIES

10.      Plaintiff, Clayton Harrell, is an 18-year-old former foster care child.  He resides in Jacksonville, Duval County, Florida with his adoptive mother and next friend, Connie Harrell.

11.      Plaintiff, Austin Trueblood, is a 31-year-old individual diagnosed with Down Syndrome.  He resides in Lakeland, Polk County, Florida with his biological parents who are also his court appointed guardians.

12.      Defendant Chad Poppell is sued in his official capacity as the Secretary of the DCF.

13.     As Secretary, Poppell directs and oversees all DCF programs, including services relating to economic self-sufficiency like Medicaid eligibility. Fla. Stat. § 409.902(1).  Secretary Poppell is based in Tallahassee, Leon County, Florida which is also where DCF is headquartered.

14.     Defendant Mary Mayhew is sued in her official capacity as the Secretary of the Florida Agency for Health Care Administration ("AHCA").

15.     As Secretary, Mayhew directs and oversees all department programs, including services relating to economic self-sufficiency. Fla. Stat. §§ 20.42, 409.902(1). Secretary Mayhew is based in and her Agency is headquartered in Tallahassee, Leon County, Florida.

## IV. CLASS ALLEGATIONS

16.     Plaintiffs bring this class action on behalf of themselves and all other individuals similarly situated in the State of Florida pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

17.     The Plaintiff Class will consist of Florida residents who are members of either of the two subclasses listed below and whose Medicaid coverage ended or will end without DCF providing one or more of the following:  (a) an *ex parte* determination of continued eligibility for Medicaid independent of eligibility for SSI or adoption assistance Medicaid; (b) timely and adequate notice regarding the complete termination of their Medicaid coverage; (c) an opportunity for a hearing to challenge the complete termination of their Medicaid coverage, including continuing coverage pending the outcome of an appeal.

> **Subclass One:**  Individuals who have been, are, or will be eligible for Medicaid pursuant to an Adoption Assistance Agreement and whose Medicaid coverage subsequently ended or will end under the Adoption Assistance category but who may remain eligible for another category of Medicaid.

**Subclass Two:**  Individuals who have been, are, or will be eligible for Medicaid pursuant to the receipt of SSI benefits and whose Medicaid coverage subsequently ended or will end due to the cessation of SSI benefits but who may remain eligible for another category of Medicaid.

18.     The requirements of Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure are met for the following reasons.

a.     The class is so numerous that joinder of all members is impracticable. In Florida, in the month of May 2019, 842 individuals were Medicaid-eligible based on an Adoption Assistance Agreement; in that same month, 993 individuals were terminated from Medicaid based on a loss of their Adoption Assistance subsidy.  Similarly, in May 2019, 425,633 individuals were receiving Medicaid as a result of their SSI eligibility; 2,479 of these individuals lost Medicaid eligibility following a determination of their ineligibility for SSI benefits.

b.     There are questions of law and fact as to the legality of the Defendants' patterns and practices with respect to terminating Medicaid coverage that are common to all members of the class, including:  (1) whether Defendants have terminated Medicaid benefits in violation of the federal Medicaid Act and the Due Process Clause of the Fourteenth Amendment; (2) whether Defendants conducted an *ex parte* determination of the class members' continued eligibility for Medicaid, independent of eligibility for SSI or Adoption Assistance Medicaid, (3) whether Defendants provided the class timely and adequate notice regarding the complete termination of their Medicaid coverage and, (4) whether Defendants provided the class an opportunity for a hearing to challenge the complete termination of their

Medicaid coverage, including continuing coverage pending the outcome of an appeal.

c.    The claims of the Plaintiffs are typical to the claims of the class as Plaintiffs seek to retain their Medicaid coverage by way of Defendants', as required by law, undertaking an *ex parte review* and either: (1) assigning them to another Medicaid category without interruption of their coverage; or (2) providing notice and opportunity for a hearing where Defendants find no grounds for their continued eligibility including the opportunity to continue benefits pending outcome of their appeal.

d.    The representative Plaintiffs will fairly and adequately protect the rights of the class as all Adoption Assistance and SSI beneficiaries are entitled to an *ex parte* review where their eligibility under Adoption Assistance or SSI ends and notice and an opportunity to be heard where Defendants terminate their Medicaid coverage.

e.    The interests of the class will be adequately protected as Plaintiffs are represented by attorneys with experience in public benefits and class action litigation.  Katherine DeBriere and Amanda Heystek have brought class actions previously in Florida's Federal Judicial District Courts. Additionally, Katherine DeBriere has practiced in the area of public benefits for 8 years and Amanda Heystek has practiced as a Plaintiff's attorneys in the area of disability civil rights and Medicaid for the past 10 years. The National Center for Law and Economic Justice is a national non-

profit with attorneys who have represented multiple certified classes of

benefits recipients whose rights have been violated by public entities.

19.    Defendant has acted on grounds generally applicable to the class by violating the

provisions of federal Medicaid Act and the Due Process Clause of the Fourteenth Amendment,

thereby making it appropriate for declaratory and corresponding injunctive relief on behalf of the

class as a whole under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

### V. LEGAL FRAMEWORK

**A. Requirements of the Medicaid Act & Implementing Regulations**

20.    The Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-

1396w-5, establishes a medical assistance program cooperatively funded by the federal and state

governments.

21.    Medicaid is designed to "enabl[e] each State, as far as practicable...to furnish (1)

medical assistance on behalf of families with dependent children and of aged, blind, or disabled

individuals, whose income and resources are insufficient to meet the costs of necessary medical

services, and (2) rehabilitation and other services to help such families and individuals attain or

retain capability for independence and self-care..." 42 U.S.C. § 1396-1.

22.    States are required to administer Medicaid in "the best interests of recipients."  42

U.S.C. § 1396a(a)(19).

23.    The Centers for Medicare & Medicaid Services (CMS) of the United States'

Department of Health and Human Services is the agency that administers Medicaid at the federal

level, including publishing rules and guidelines.  These rules and regulations are set forth in 42

C.F.R. §§ 430.0 *et seq.* and in the CMS State Medicaid Manual.  These rules and regulations are

binding on all states that participate in Medicaid.

24.     A state's participation in Medicaid is voluntary.  Once a state elects to participate it must adhere to the federal legal requirements as provided by the United States Constitution, the Medicaid Act, and the rules promulgated by CMS. 42 U.S.C. § 1396, *et seq.*

25.     Florida elects to participate in the Medicaid program.  Fla. Stat. § 409.901-.9205.

26.     Once a state elects to participate in the Medicaid program, the state must adopt a plan that meets the requirements of the Medicaid Act.  42 U.S.C. § 1396-1; 42 C.F.R. § 430.12.

27.     States can make changes to their Medicaid programs by submitting state plan amendments for CMS's approval.  42 U.S.C. § 1396a; 42 C.F.R. § 430.12.

28.     The Medicaid Act provides that the provisions of the state Medicaid plan become mandatory upon and must be in effect in all political subdivisions of the state. 42 U.S.C. § 1396a(a)(1); 42 C.F.R. § 431.50(b)(1).

29.     Under the federal Medicaid statute, states must provide medical assistance "with reasonable promptness to all eligible individuals." 42 U.S.C. §1396a(a)(8). In addition, states must make medical assistance available to all qualifying individuals.  42 U.S.C. § 1396a(a)(10).

30.     The regulations implementing sections (a)(8) & (a)(10) require the state Medicaid agency to continue providing Medicaid until the beneficiary is determined to be ineligible under all Medicaid eligibility categories. 42 C.F.R §§ 435.930(b), 435.916(f)(1).  This process is referred to as an "*ex parte* review."

31.     In addition, the state Medicaid agency must provide the "opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3).

32.     Pursuant to implementing regulations, the state Medicaid agency must provide written notice of the right to a pre-termination hearing at least ten days before Medicaid coverage

is terminated, stating the specific reasons for the termination, the specific regulation supporting

the action, and an explanation of the right to a hearing. 42 C.F.R. §§ 431.210- 211, 231, 435.917.

33.     Implementing regulations further require the state Medicaid agency to provide

plaintiff and the putative class members continued Medicaid coverage pending the outcome of an

appeal.  *Id.*  Receipt of benefits during the pendency of a Medicaid appeal is commonly referred

to as "aid paid pending."

34.     States must streamline and simplify the process for eligible persons to remain

enrolled in Medicaid. 42 U.S.C. § 1396w-3.

35.     States are required to re-determine Medicaid eligibility "to the maximum extent

practicable" based on electronic matching and other third-party data, rather than by asking the

applicant or recipient to prove their eligibility with paper documents. 42 U.S.C. §18083(c)(3); 42

C.F.R.§§435.916(a)(2), .952(c).

36.     Implementing regulations prohibit the State agency from requiring Medicaid

beneficiaries to provide information not needed to re-determine their eligibility. 42 C.F.R. §

435.907(e).

37.      Implementing regulations prohibit the State agency from making requests for

information that are not clear and understandable to beneficiaries. 42 C.F.R. § 435.905(b).

**B. Florida's Medicaid Program**

38.     AHCA is the single state agency in Florida responsible for the oversight of the

state's entire Medicaid program, including eligibility determinations.  Fla. Stat. § 409.902(1).

39.     Although AHCA is Florida's single state agency, Medicaid eligibility is

administered directly by DCF and, with limited exceptions (which are set forth in more detail

below), is administered through DCF's Economic Self Sufficiency (ESS) program.

Fla. Stat. §§ 409.902(1) & 409.919; Fla. Admin. Code r. 65A-1.203(2).

40.     DCF manages the ESS program, including Medicaid eligibility, through an electronic public assistance eligibility system known as Florida Online Recipient Integrated Data Access or "FLORIDA."[1]

41.     The FLORIDA system transfers data to and from other electronic systems regarding an individual's Medicaid eligibility. For example, the FLORIDA system communicates with the Florida Safe Families Network (FSFN) system about information related to children in the child welfare system.  FLORIDA also communicates with the Social Security Administration through a State Data Exchange (SDX) and other data exchange systems to provide or verify applicant or recipient information from the Social Security Administration (SSA).

42.     Florida's state plan and its amendments set forth the categories of individuals eligible for all services under its state plan Medicaid program.

43.     Categories of Florida Medicaid eligible individuals include but are not limited to:

(a)  Individuals who receive SSI benefits under Title XVI of the Social Security Act,

(b)  Individuals who qualify for Protected Medicaid,[2]

---

[1] In 2004, DCF introduced the Automated Community Connection to Economic Self-Sufficiency ("ACCESS") which creates an online platform for public benefits applications and re-certifications including most (but not all) Florida Medicaid programs.  Eligibility through Child in Care Medicaid or through the receipt of SSI benefits is not managed through ACCESS.
[2] Among those eligible for Protected Medicaid in Florida are individuals classified by the SSA as a Disabled Adult Child or "DAC."  *See* 42 U.S.C. § 1383c(c).

(c)  Individuals who receive Title IV-E or non-Title IV-E adoption

subsidies,

(d)  Individuals age 0 to 1 whose household income is 200% of the Federal

Poverty Line (FPL) or below,

(e)  Individuals age 1-18 whose household income is 138% of the FPL or

below,

(f)  Pregnant women whose household income is 200% of the FPL or

below,

(g)  Caregivers and individuals age 19-20 whose household income is 32%

of the FPL or below,

(h)  Individuals eligible for the iBudget and Long Term Care Home &

Community Based Services Medicaid waivers, and

(i)  Individuals receiving care in an institutional setting.

*See* Fla. Admin. Code rs. 59G-1.058, 65A-1.703, .710; Fla. Stat. §§ 409.903, .904

## C. Adoption Assistance Medicaid

44.     In Florida, individuals who adopt a child from the child welfare system are, under

certain circumstances, eligible to receive a subsidy pursuant to an Adoption Assistance

Agreement. *See also*, 42 U.S.C. § 1396a(a)(10)(A)(i)(I), 1396a(a)(10)(A)(ii)(VIII);

Fla. Stat. §§ 409.903(4), 409.166(4).

45.     The adopted child can also receive Medicaid coverage through the term of the

Adoption Assistance Agreement.  This is often referred to as "Adoption Assistance Medicaid."

DCF CFOP 170-15, Chapter 2.

46.     DCF further classifies Adoption Assistance Medicaid as a category of Child in Care Medicaid.  *Id.*

47.     Medicaid applications, recertifications, and case closures regarding Adoption Assistance and other Child in Care Medicaid categories are managed through the child welfare electronic system known as FSFN.  *Id.* at Chapter 2-4, 2-15, and 2-17.

48.     When there is a change in circumstances of Adoption Assistance Medicaid, such as the expiration of the Agreement upon a child turning age 18, that information is entered into FSFN and then submitted to the FLORIDA system.  *Id.* at Chapter 2-15.

49.     At the time FSFN transfers information about the individual's coverage under the Adoption Assistance Medicaid category to the FLORIDA system, DCF is required to undertake an *ex parte* review to determine whether the individual is eligible for any other category prior to completely terminating Medicaid coverage.  *Id.* at Chapter 2-15(e); Fla. Admin. Code r.65A-1.702(4)(a).

50.     DCF is also required to notify the individual of the outcome of its *ex parte* review and, if the individual disagrees with the outcome, allow him or her to request a hearing including the opportunity to receive continued Medicaid benefits pending the outcome of the appeal.  Fla. Admin. Code r. 65A-1.702(4)(b).

51.     Although DCF's policy requires an *ex parte* determination to be completed at the time FSFN transmits information about a change in Adoption Assistance Medicaid eligibility to FLORIDA, DCF's actual pattern and practice results in automatic termination of Medicaid coverage without an *ex parte* review and without sending notice of termination to either the adoptive parent or the adult child.

**D. SSI-Related Medicaid**

52.     SSI is a benefit program established by Congress for the aged, blind, and disabled. *See* 42 U.S.C. §§ 1381 *et seq*.

53.     To qualify for SSI benefits, one must meet SSI criteria for disability and also have income and resources that do not exceed program limits. *See* 42 U.S.C. § 1382.

54.     Florida is a "1634" state.  A 1634 state is one in which the Social Security Administration enters into an agreement with a state to "determine eligibility for medical assistance in the case of aged, blind, or disabled individuals under such State's plan approved under…[Title XIX of the Social Security Act]."  42 U.S.C. § 1383c(a).

55.     In Florida, a person who is eligible for any amount of SSI is categorically eligible for Medicaid. *See* 42 U.S.C. § 1396a(a)(10)(A)(i); Fla. Stat. § 409.903(2).

56.     As a 1634 state, Florida does not manage the Medicaid eligibility of an individual receiving SSI benefits.  The Medicaid eligibility is managed instead by the SSA.  *See* DCF TRANSMITTAL No: P-11-06-0007, *Supplemental Security Income Termination Review Process* (June 7, 2011).

57.     If the SSA determines that an individual is no longer eligible for SSI benefits because of a change in the individual's circumstances, then the SSA terminates the individual's SSI benefits and transfers that information to DCF. *See* DCF TRANSMITTAL No: P-11-06-0007; *see also*, State of Florida, Department of Children and Families, *ACCESS Florida System Technical Architecture Overview* at 44–45; 76 (June 1, 2012).

58.     Once DCF receives notification from the SSA that an individual is SSI ineligible, DCF is required to undertake an *ex parte* review to determine whether the individual is eligible

for any other category of Medicaid prior to termination.  *See* DCF TRANSMITTAL No: P-11-06-0007; Fla. Admin. Code r.  65A-1.702(4), F.A.C.

59.    DCF is then required to notify the individual of the outcome of its *ex parte* review and, if the individual disagrees with the outcome, allow him or her to request a hearing including the opportunity to receive continued Medicaid eligibility pending the outcome of the appeal.  *See* DCF TRANSMITTAL No: P-11-06-0007; Fla. Admin. Code r.  65A-1.702(4)(b).

60.    Although DCF's policy requires an *ex parte* determination to be completed at the time the SSA notifies DCF about an individual's SSI termination, the actual pattern and practice of DCF results in automatic termination of coverage without an *ex parte* review and without sending notice of termination to the SSI recipient or the recipient's representative.

## VI. FACTS COMMON TO THE CLASS MEMBERS

61.    In Florida, as of May 2019, there were 842 individuals receiving Medicaid based on an Adoption Assistance Agreement; there were 425,633 individuals receiving Medicaid based on eligibility for SSI benefits.

62.    In May 2019, there were 993 individuals who lost Medicaid eligibility due to the expiration of their Adoption Assistance Agreement; there were 2,479 individuals who lost Medicaid eligibility due to a loss of SSI benefits.

63.    DCF maintains a system that relies on its ACCESS staff to manually review data exchanges and termination reports from the FSFN and SSA system to undertake *ex parte* reviews when class members are terminated from Medicaid due to a loss of an adoption subsidy or SSI benefits.

64.    By its own admission, DCF does not employ a sufficient amount of staff to process the information transferred to FLORIDA through data exchanges, like those from the FSFN and SSA systems.

65.    Based on a September 2018 State of Florida Auditor General report, DCF had not, as of November 29, 2017, timely reviewed or processed 650,131 data exchanges.  *See* State of Florida Auditor General, *Information Technology Operational Audit – Department of Children and Families, Florida Online Recipient Integrated Data Access*, Report No. 2019-022, September 2018, at 2–3, *available at* https://flauditor.gov/pages/pdf_files/2019-022.pdf .

66.    The Auditor General further found that "the risk that eligible individuals may not timely receive benefits . . . is increased when data exchange responses are deleted or are not timely reviewed and processed." *Id.*

67.    The report makes clear that DCF has repeatedly been warned of the problem but has not successfully decreased the amount of un-reviewed and unprocessed data exchanges.  *Id.*

68.    According to the State Auditor report, in response to the Auditor's inquiries, DCF stated that "the number of overdue data exchange responses was due, in large part, to the volume of data exchange responses received compared to the number of staff available to process the responses." *Id.* at 3.

69.    Since 2014, the legal services' organizations of undersigned counsel have represented at least 30 individuals who lost their Medicaid coverage due to termination of an adoption subsidy or SSI benefits and for whom Defendants failed to conduct an *ex parte* review of their continued eligibility under another Medicaid category.  However, the legal services organizations of undersigned counsel rely on individuals contacting them and it is unknown how many individuals are not aware of their services but may nonetheless be impacted by

Defendants' failures. In these individual cases, Defendant also failed to provide any pre-termination notice setting forth the individual's right to a hearing and aid paid pending the outcome of such an appeal.

70.    Without assistance from undersigned counsels' organizations to enforce their right to continued Medicaid eligibility and educate them about their right to adequate, pre-termination notice and hearing, these individuals would likely still be without Medicaid. Many others who have not retained the assistance of legal counsel have lost Medicaid coverage.

71.    Florida healthcare service providers that case manage recipients' Medicaid eligibility consistently see DCF fail to provide an *ex parte* review or timely notice when those recipients lose their Adoption Assistance Medicaid or SSI. The providers have adapted their business practices so they can proactively address a potential Medicaid lapse; the providers view the problem as especially serious because Florida recently eliminated retroactive Medicaid eligibility.

72.    DCF does not employ a sufficient amount of staff necessary to complete *ex parte* reviews for class members when the class members lose their Medicaid eligibility due to cessation of an adoption subsidy or SSI benefits.

73.    DCF does not employ a sufficient amount of staff to ensure that class members receive adequate, pre-termination notice when they lose Medicaid eligibility due to cessation of an adoption subsidy or SSI benefits.

74.    DCF does not have a system in place that safeguards the rights of class members to *ex parte* reviews.

75.    DCF does not have a system in place to ensure that class members receive adequate, pre-termination notice when they lose Medicaid eligibility due to loss of an adoption subsidy or SSI benefits.

76.    Defendants' pattern and practice is to terminate class members' Medicaid coverage without conducting an *ex parte* review when the class members' lose Medicaid eligibility derived from an Adoption Assistance Agreement or receipt of SSI benefits.

77.     Furthermore, Defendants' pattern and practice is to terminate class members from Medicaid without providing adequate, pre-termination notice, including opportunity to be heard and aid paid pending.

## VII. FACTS AND ALLEGATIONS OF NAMED PLAINTIFFS

### A. Clayton Harrell

78.    Plaintiff, Clayton Harrell, is an 18 year old former foster care child.

79.    Clayton was adopted by his mother, Connie Harrell.

80.    Clayton is diagnosed with empty sella syndrome, which led to pituitary dwarfism (growth deficiency).  He is also diagnosed with pseudo-tumor cerebri, fetal alcohol syndrome, and generalized anxiety disorder.  He sees multiple specialists and is prescribed several medications to manage severe migraines and behavioral health concerns.

81.    The combination of Clayton's medical and behavioral health needs makes ongoing Medicaid coverage essential.

82.    Beginning on December 7, 2010, Clayton's Medicaid eligibility derived from an Adoption Assistance Agreement entered into between Ms. Harrell and a DCF Community Based Care child welfare contracting agency known as Family Support Services of North Florida.

83.     Ms. Harrell signed an updated Adoption Assistance Agreement on November 12, 2013 to receive an increased adoption subsidy.  The 2013 Agreement also provided for Clayton's continued Medicaid eligibility until his 18th birthday.

84.     Effective August 1, 2019, Clayton's Adoption Assistance Agreement ended because Clayton turned 18.

85.     Upon the end of the Adoption Assistance Agreement, Clayton's Medicaid eligibility based on the Agreement also ended.

86.     Defendants did not inform either Clayton or his mother, Connie, that his Medicaid coverage would end effective August 1, 2019.

87.     Clayton and his mother, Connie, discovered Clayton's Medicaid ended when the office of Clayton's primary care physician, Dr. Rita Nathawad, informed him of the lapse.

88.     DCF failed to conduct an *ex parte* review to determine Clayton's eligibility under any other category of Medicaid.  Had DCF conducted an *ex parte* review, it would have discovered that, due to age, household income, and disability, Clayton continues to be eligible for Medicaid under other Medicaid categories, including SSI and Family Related Medicaid; DCF would have assigned Clayton to the appropriate Medicaid category or requested additional information to complete a redetermination of his Medicaid eligibility.

89.     DCF also did not provide notice to Clayton about the outcome of an *ex parte* review and his ability to request a hearing and continued benefits during the pendency of that hearing.

### B.  Austin Trueblood

90.     Plaintiff, Austin Trueblood, is a 31-year-old man diagnosed with Down Syndrome.

91.    Austin received SSI benefits from March 1, 2010 to April 30, 2019.

92.    On January 20, 2019, the Social Security Administration approved Austin's

application for Disabled Adult Child ("DAC") benefits in the amount of $1,405.00 per month.

93.    Austin's monthly DAC benefit rendered Austin income ineligible for continued

receipt of SSI benefits and, on March 1, 2019, the Social Security Administration terminated

Austin's SSI benefits.

94.    On January 28, 2019, AHCA mailed to Austin a notice stating:

> [t]he Social Security Administration has ended your Supplemental
> Security Income (SSI).  You have been covered by the Florida
> Medicaid Program because were on SSI.  Now the Department of
> Children and Families (DCF) must see if you can be covered for
> Medicaid under another Florida Medicaid program.  If DCF needs
> any information you, they will send you a letter in the mail.

95.    Although AHCA stated that DCF would determine if Austin "could be covered

for Medicaid under another Florida Medicaid program," DCF failed to do so.

96.    When Austin Trueblood's mother, Suzanne Trueblood, called the phone number

provided on the AHCA notice, she learned that Defendants had already terminated Austin's

Medicaid coverage.

97.    DCF failed to conduct an *ex parte* review to determine Austin's eligibility under

any other category of Medicaid.  Had DCF conducted a proper *ex parte* review, it would have

discovered that, due to Austin's receipt of DAC benefits, he continues to be eligible for Medicaid

under the category of Protected Medicaid and would have continued Austin's Medicaid

eligibility under that category.

98.    DCF also failed to provide any notice to Austin about an outcome of an *ex parte*

review and his ability to request a hearing and continue benefits during the pendency of that

hearing.

## VIII. CAUSES OF ACTION

**A. First Cause of Action:  Defendants' Fail to Provide *Ex Parte* Reviews in Violation of 42 U.S.C. § 1396a(a)(8)**

99.    Defendants' pattern and practice of terminating Medicaid coverage without first reviewing a recipient's continued eligibility and furnishing that Medicaid assistance with reasonable promptness violates Plaintiffs' and class members' right under 42 U.S.C. § 1396a(a)(8) to continue receiving Medicaid until determined to be ineligible. This violation of federal law is actionable pursuant to 42 U.S.C. § 1983.

**B. Second Cause of Action:  Defendants' Fail to Provide *Ex Parte* Reviews and Continue Medicaid Eligibility in Violation of 42 U.S.C. § 1396a(a)(10)**

100.    Defendants' pattern and practice of terminating Medicaid coverage without first reviewing a recipient's continued eligibility and providing for making medical assistance available to the Medicaid recipient violates Plaintiffs' and class members' right under 42 U.S.C. § 1396a(a)(10) to continue receiving Medicaid until determined ineligible.  This violation of federal law is actionable pursuant to 42 U.S.C. § 1983.

**C. Third Cause of Action:  Defendants' Fail to Provide Opportunity for a Fair Hearing in Violation of 42 U.S.C. § 1396a(a)(3)**

101.    Defendants' pattern and practice of failing to provide opportunity for a fair hearing which includes the right to adequate, pre-termination notice prior to  terminating the Medicaid coverage of Plaintiffs and the Plaintiff class members violates 42 U.S.C. § 1396a(a)(3). This violation of federal law is actionable pursuant to 42 U.S.C. § 1983.

**D. Fourth Cause of Action:  Defendants' Fail to Provide Adequate Pre-Termination Notice and Opportunity for Fair Hearing in Violation of the Due Process Clause of the Fourteenth Amendment**

102.    Defendants' practice of failing to assure adequate and timely written pre-termination notice before Defendants terminate the Medicaid eligibility of Plaintiffs and the

Plaintiff class violates the Due Process Clause of the Fourteenth Amendment of the United States

Constitution. This violation of federal law is actionable pursuant to 42 U.S.C. § 1983 and the

Fourteenth Amendment to the U.S. Constitution.

### E. Fifth Cause of Action: Defendants' Fail to Provide Opportunity for a Fair Hearing in Violation of the Due Process Clause of the Fourteenth Amendment

103.    Defendants' practice of failing to assure the right to a pre-termination hearing

before it terminates the Medicaid eligibility of Plaintiffs and the Plaintiff Class violates the Due

Process Clause of the Fourteenth Amendment of the United States Constitution. This violation of

federal law is actionable pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the

U.S. Constitution.

## IX. REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

A. Certify this action as a class action pursuant to Fed. R. Civ. P. 23;

B. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 that:

   Defendants' pattern and practice governing eligibility reviews for Medicaid violate:

   a. 42 U.S.C. § 1396a(a)(3),

   b. 42 U.S.C. § 1396a(a)(8),

   c. 42 U.S.C. § 1396a(a)(10), and

   d. the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

C. Grant a permanent injunction requiring the Defendants, their agents, successors, and

   employees from continuing the illegal patterns and practices and to reinstate Medicaid

   coverage to all affected class members until their Medicaid eligibility has been properly

re-determined under all eligibility categories and until adequate and timely notice of

termination has been provided to them;

D.  Retain jurisdiction over this action to ensure Defendants' compliance with the mandates

of the Court's Orders;

E.  Award to the Plaintiffs costs and reasonable attorney fees pursuant to 42 U.S.C. §1988;

and

F.  Order such other relief as this Court deems just and equitable.

Respectfully submitted this 7th day of August, 2019.

Plaintiffs by their Attorneys,

*/s/ Katy DeBriere*
Katherine DeBriere
Trial Counsel

Fla. Bar No.: 58506
Florida Health Justice Project
126 W. Adams Street
Jacksonville, FL 32202
Telephone: (904) 356-8371, ext. 333
Facsimile: (904) 356-8780
debriere@floridahealthjustice.org

DISABILITY RIGHTS FLORIDA
Amanda E. Heystek, Esq.
Fla. Bar. No.:  0285020
1000 N. Ashley Dr., Suite 640
Tampa, FL 33602
Telephone:  (850) 488-9071, ext. 9762
Facsimile:  (859) 488-8640
amandah@disabilityrightsflorida.org

Rachel Siegel-McLaughlin, Esq.
Fla Bar No.:  116253
2473 Care Dr., Ste. 200
Tallahassee, FL 32308-9803
Telephone:  (850) 488-9071, ext. 9743
Facsimile: (850) 488-8640
rachels@disabilityrightsflorida.org

NATIONAL CENTER FOR LAW
& ECONOMIC JUSTICE, INC.
Marc Cohan*
275 Seventh Avenue, Suite 1506
New York, NY 10001
Telephone: (212) 633-6967
cohan@nclej.org

*Counsel for Plaintiffs and Proposed Class Counsel*

\*Pursuant to Local Rule 2.02 of the Middle District of Florida