## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CLAYTON HARRELL, by and through his next
Friend, Connie Harrell, and AUSTIN TRUEBLOOD,
by and through his guardian, Suzanne Trueblood, on
behalf of themselves and all others similarly situated,

      Plaintiffs,

v.                                                           Case No.:

CHAD POPPELL, in his official capacity as Secretary
for the FLORIDA DEPARTMENT OF CHILDREN
AND FAMILIES, and MARY MAYHEW, in her
official capacity as Secretary for the FLORIDA
AGENCY FOR HEALTH CARE
ADMINISTRATION,

      Defendants.

_____/

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW

**PLEASE TAKE NOTICE** upon the annexed declarations of Suzanne Trueblood dated

July 30, 2019; Clayton Harrell dated August 2, 2019; Darlene Sheffield dated August 6, 2019;

Abby Gribble dated August 1, 2019; Christina Bell dated July 24, 2019; Donna Wilson dated

August 5, 2019; Miles Smith dated July 28, 2019; Anita Moak dated July 29, 2019; Adam

Brockman dated July 31, 2019; Patricia Houghland dated July 31, 2019; Amparo Perales dated

July 31, 2019; Harold Thornton dated July 31, 2019; Katelyn Martin dated July 26, 2019; Linda

Patterson dated July 29, 2019; Ryan Chandler dated July 31, 2109; Marty Lyons dated July 30,

2019; Victor Panoff dated August 1, 2019; Katherine DeBriere dated August 5, 2019; and upon

all the papers filed herein, Plaintiffs move this court, at a time and place to be determined by the

United States District Judge for the Middle District of Florida to which this case is assigned, for

an Order granting Plaintiffs' motion pursuant to Federal Rule of Civil Procedure 23 and Local

Rule 4.04, M.D. Fla., certifying two subclasses as follows:

> *Subclass One*: Individuals who have been, are, or will be eligible for Medicaid pursuant to an Adoption Assistance Agreement and whose Medicaid coverage subsequently ended or will end under the Adoption Assistance category but who may remain eligible for another category of Medicaid.

> *Subclass Two*: Individuals who have been, are, or will be eligible for Medicaid pursuant to the receipt of SSI benefits and whose Medicaid coverage subsequently ended or will end due to the cessation of SSI benefits but who may remain eligible for another category of Medicaid.

Plaintiffs further request that the Order designate the undersigned counsel as Class

Counsel, pursuant to Federal Rule of Civil Procedure 23(g).

## MEMORANDUM OF LAW

### I.      INTRODUCTION

The Medicaid Act establishes multiple categories of eligibility through which an individual

may qualify for insurance coverage of his or her health care. Once an individual has been

determined eligible under a Medicaid category, the state Medicaid agency cannot terminate

coverage without taking the following steps: first, the state Medicaid agency must determine

whether the beneficiary remains eligible for Medicaid under any other eligibility category and, if

so, continue Medicaid coverage without interruption; second, if the individual is determined

ineligible, the state Medicaid agency must provide the beneficiary with proper written notice and

opportunity for a fair pre-termination hearing.  These steps, together referred to as an "*ex parte*

review," ensure continuity of coverage and fairness in the administration of the Medicaid

program and are mandated by federal Medicaid law and the Due Process Clause of the

Fourteenth Amendment to the U.S. Constitution.

Plaintiffs Clayton Harrell and Austin Trueblood bring this action to challenge Defendants' pattern and practice of failing to conduct *ex parte* reviews for two categories of Medicaid participants: adopted children who formerly received Medicaid pursuant to an Adoption Assistance Agreement ("Adoption Assistance Medicaid"), and former Supplemental Security Insurance ("SSI") recipients.  As a result of Defendants' failures, thousands of individuals who fall under either of these Medicaid categories have been or in the near future will be terminated without Defendants having provided: (1) an *ex parte* determination of continued eligibility independent of eligibility derived from their SSI or Adoption Assistance Agreement, (2) timely and adequate notice regarding the complete termination of their Medicaid coverage, and/or (3) an opportunity for a hearing to challenge the complete termination of their Medicaid coverage, including continued receipt of healthcare pending the outcome of an appeal.

Defendants' failures have caused and will continue to cause hardship for some of Florida's most vulnerable residents—children and people with disabilities, many of who rely on Medicaid to access much needed healthcare.  For this reason and the reasons set forth herein, Plaintiffs therefore move the Court for an order pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, certifying the below two subclasses and appointing undersigned counsel as Class Counsel.

> *Subclass One*: Individuals who have been, are, or will be eligible for Medicaid pursuant to an Adoption Assistance Agreement and whose Medicaid coverage subsequently ended or will end under the Adoption Assistance category but who may remain eligible for another category of Medicaid.

> *Subclass Two*: Individuals who have been, are, or will be eligible for Medicaid pursuant to the receipt of SSI benefits and whose Medicaid coverage subsequently ended or will end due to the cessation of SSI benefits but who may remain eligible for another category of Medicaid.

## II.    LEGAL FRAMEWORK

The Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w-5, establishes a medical assistance program cooperatively funded by the federal and state governments. A state's participation in Medicaid is voluntary. Once a state elects to participate, however, it must adhere to federal legal requirements as provided by the U.S. Constitution, the Medicaid Act, and the rules promulgated by the federal Medicaid agency.[1] 42 U.S.C. § 1396, *et. seq.*; *see also, Tallahassee Memorial Regional Medical Center vs. Cook*, 109 F.3d 693, 702 (11th Cir. 1997).

Florida has elected to participate in the Medicaid program. As required by federal law, 42 U.S.C. § 1396a(a)(5), Florida has designated the Agency for Healthcare Administration ("AHCA") as its single state Medicaid agency. Fla. Stat. § 409.902(1). AHCA has delegated the duties for processing Medicaid eligibility determinations to the Florida Department of Children and Families ("DCF"). Fla. Stat. §§ 409.902(1), 409.919; Fla. Admin. Code r. 65A-1.203(2). However, AHCA, as the designated single state agency, is required to ensure DCF follows federal Medicaid laws and regulations. 42 C.F.R. § 431.10(c)(3); *see also*, *Tallahassee Memorial*, 109 F.3d at 702.

Once an individual is determined eligible for Medicaid, medical assistance must be provided promptly and eligibility must be re-determined every twelve months, unless there is a change in circumstances affecting eligibility before then, in which case the re-determination must occur as soon as the change is known.  *See* 42 U.S.C. § 1396a(a)(8); 42 C.F.R. § 435.916(a)(1), (b), (d). Before Medicaid is terminated, the agency must first determine the beneficiary to be ineligible under all other Medicaid categories.  42 C.F.R. §§ 435.930(b), 435.916(f)(1).

---

[1] The Centers for Medicare & Medicaid Services ("CMS") of the U.S. Department of Health and Human Services is the agency that administers Medicaid at the federal level, including publishing rules and guidelines set forth in 42 C.F.R. §§ 430.0 *et seq.*  and in the CMS State Medicaid Manual.

States must streamline the process for eligible persons to remain enrolled in Medicaid. 42

U.S.C. § 1396w-3. States are required to re-determine Medicaid eligibility "to the maximum

extent practicable" based on electronic matching and other third-party data rather than by asking

the applicant or recipient to prove their eligibility with paper documents. 42 U.S.C.

§ 18083(c)(3); 42 C.F.R. §§ 435.916(a)(2), .952(c). Again, if an individual continues to be

entitled to another Medicaid category included in Florida's state plan, then the agency must

continue the individual's enrollment in Medicaid under the new category. 42 C.F.R.

§§ 435.930(b), 435.916(f)(1). This process is referred to as an *ex parte* Medicaid review.

After having conducted an *ex parte* review, if the state agency finds that an individual's

circumstances do not satisfy the eligibility criteria of any other Medicaid category, then the

agency must send to the individual timely, adequate written notice of the right to a pre-

termination hearing.  42 C.F.R. §§ 431.210-211, .231, 435.917. Timely, adequate written notice

must include the following: (1) a statement of the action the agency intends to take including the

effective date of the action, (2) a clear statement of the specific reasons supporting the action, (3)

the law that supports the agency's action, (4) an explanation of the right to a hearing, and (5) an

explanation of the circumstances under which Medicaid is continued if a hearing is requested. 42

C.F.R. § 431.210.  The notice must be sent in advance of the agency's action by at least ten days,

and the affected individual must be given the opportunity to request continuation of healthcare

coverage pending the outcome of a hearing. 42 C.F.R. §§ 431.211, .230(a).

### III.    FACTUAL BACKGROUND

#### A.  Defendants' Written Policy Regarding *Ex Parte* Reviews for Class Members

For most Medicaid recipients in Florida, DCF directly manages the recipients' eligibility

through an electronic system known as Florida Online Recipient Integrated Data Access

("FLORIDA") and, with limited exception, the Automated Community Connection to Economic Self-Sufficiency System Florida or "ACCESS Florida" ("ACCESS"). DeBriere Decl., ¶3, Ex. 1 at Sect. 1.1.[2] However, these systems do not manage eligibility for the two categories of Medicaid recipients at issue in this case: (1) children adopted from the child welfare system whose families receive an adoption subsidy and Medicaid eligibility pursuant to an Adoption Assistance Agreement ("Adoption Assistance Medicaid Recipients"),[3] and (2) persons whose eligibility derives from the receipt of SSI benefits ("SSI Recipients").[4]

Data regarding Adoption Assistance Medicaid Recipients' eligibility is maintained through the Florida Safe Families Network (FSFN).  DeBriere Decl. ¶3, Ex. 2 at Ch. 2-4 & Ex. 3 at Section 6.6. When there is a change in circumstances of Adoption Assistance Medicaid, such as a termination of the Adoption Assistance Agreement (and, consequently, the end of the adoption subsidy payments) because a child turns 18, that information is entered into FSFN and then submitted to the FLORIDA system. DeBriere Decl. ¶3, Ex. 2 at Ch. 2-15. This is known as a "data exchange." DeBriere Decl. ¶3, Ex. 3 at Sect. 6.

SSI Recipients' Medicaid eligibility is managed through the Social Security Administration, because Florida is what is referred to as a 1634 state.[5] DeBriere Decl. ¶3, Ex. 4. However, "when an individual's SSI terminates, responsibility for Medicaid eligibility transfers from the SSA

---

[2] FLORIDA is an electronic public assistance eligibility mainframe system.  DeBriere Decl., ¶3, Ex. 1 at Sect. 1.1. ACCESS is DCF's more recently developed public assistance eligibility system designed to support the older FLORIDA mainframe system by streamlining public benefits applications and DCF staff's management thereof.  *Id.*

[3] 42 U.S.C. § 1396a(a)(10)(A)(i)(I), 1396a(a)(10)(A)(ii)(VIII); Fla. Stat. §§ 409.903(4), 409.166.

[4] 42 U.S.C. § 1396a(a)(10)(A)(i); Fla. Stat. § 409.903(2).

[5] A 1634 state is one in which the Social Security Administration enters into an agreement with a state and agrees to "determine eligibility for medical assistance in the case of aged, blind, or disabled individuals under such State's plan approved under…[Title XIX of the Social Security Act]."  42 U.S.C. §1383c(a).

to…[DCF]." *Id.* DCF is notified of the SSA's termination of an individual's SSI benefits through

an SSI Termination Tracking Report located in the Exceptions Management System of ACCESS

Florida. DeBriere Decl. ¶3, Ex. 4 & Ex. 1 at Sect. 3.12. According to DCF's written procedure,

DCF staff must manually access and review both the SSI Termination Report in the Exceptions

Management System and other data exchanges to conduct an *ex parte* review. DeBriere Decl. ¶3,

Ex. 4 & Ex. 1 at Sect. 3.12

As outlined above, both FSFN and SSA systems transfer information to DCF about an

individual's loss of an adoption subsidy or SSI benefits, at which point DCF is required to

undertake an *ex parte* review to determine whether the individual is eligible for any other

category of Medicaid (outside of the eligibility category derived from receipt of an adoption

subsidy or SSI benefits) prior to terminating coverage completely. Dkt. #1 at ¶49, 58; 42 C.F.R.

§§ 435.930(b), 435.916(f)(1). Once DCF completes the *ex parte* review, it is required to issue a

pre-termination notice ten days prior to the end of the individual's Medicaid eligibility and

continue an individual's benefits pending the outcome of a hearing if the individual so requests

one. 42 C.F.R. §§ 431.210, .211., .230(a). DCF's written policies reflect these requirements.  Fla.

Admin. Code r.  65A-1.702(4); DeBriere Decl., ¶3, Ex. 2 & 4.

### B.  Defendants' Pattern and Practice of Failing to Conduct *Ex Parte* Reviews

While DCF's <u>written</u> policies sufficiently reflect the *ex parte* and notice requirements set

forth in federal law and at issue in this case, DCF's actual pattern and practice falls far short of

meeting their legal obligations. As described below, DCF routinely fails to process data

exchanges, resulting in DCF staff not having the information necessary to conduct an *ex parte*

review and, instead, Medicaid coverage for class members ends without notice. Dkt. #1, ¶63-68,

72, 74, 76.

7

Defendants are well aware of their systemic failures. From as early as 2008 to as recently as September 2018, Florida's Auditor General has found that "[t]he Department did not timely review and process numerous data exchange responses, increasing the risk that benefits may not be paid timely or accurately." DeBriere Decl., ¶3, Ex. 5 at 3. The number of *unprocessed* data exchanges have fluctuated between 645,753 in July 2009 to over 1 million in May 2016 to 650,131 in November 2017. DeBriere Decl., ¶3, Ex. 6 at 3 & Ex. 5 at 2. A 2016 Auditor General report found that the data exchanges responses "were at least 1 day over the 10- and 45-calendar day review and processing time frame established in the ACCESS Florida Program Policy Manual[6]…." DeBriere Decl., ¶3, Ex. 7 at 2. Notably, the Auditor General reports consistently state the cause for the number of unprocessed data exchanges is due, in part, to "an insufficient number of [DCF] staff" to process requests. DeBriere Decl., ¶3, Ex. 5-7.

In addition to Defendants' failure to timely process data exchanges and conduct *ex parte* reviews, DCF also consistently fails to provide adequate (or any) pre-termination notice before the Medicaid eligibility of members of the proposed class is terminated. Dkt. #1, ¶73, 75, 77. Where an individual loses their Medicaid eligibility due to the end of an adoption subsidy, DCF fails to provide timely notice of the individual's Medicaid eligibility, and the individual discovers the loss through other means, such as information transmitted by a medical provider. Dkt. #1, ¶87. Likewise, for those individuals who lose Medicaid coverage due to cessation of SSI benefits, they receive notice from the SSA that their SSI benefits will end and their Medicaid eligibility may also be affected. Dkt. #1, ¶96. In some cases, like Plaintiff Austin Trueblood,

---

[6] The ACCESS Florida Program Policy Manual is used by DCF ACCESS staff as a training and technical assistance manual in the administration of all DCF public benefits programs including Florida Medicaid. DeBriere Decl., ¶3, Ex. 10. The manual sets forth the relevant timeframes for making a determination, redetermination, and *ex parte* reviews of an individual's Medicaid eligibility in Florida. *Id.* at Ex. 11 at Sect. 0630.000-0640.0000 & Ex. 12 at Sect. 0830.0000-0840.0000

individuals whose SSI benefits ceased also received notice from AHCA stating that SSA had

ended their SSI, but that the DCF "must see if you can be covered for Medicaid under another

Florida Medicaid program." The notice further informs individuals that DCF may a letter in the

mail seeking additional information or will send a letter within 30 days explaining any action

DCF takes on the case.  Dkt. #1, ¶96; *see also*, DeBriere Decl., ¶3, Ex. 4.

AHCA's notice, however, is insufficient to inform proposed class members that termination

of their healthcare coverage is imminent. 42 C.F.R. §§ 431.210-.211, .230(a), .231, 435.917.[7]

Additionally, DCF routinely fails to take any action or follow through on AHCA's statement that

DCF will send a letter within 30 day. *See e.g.*, Trueblood Decl., ¶9; Brockman Decl., ¶6; Perales

Decl., ¶7; Martin Decl., ¶6; Patterson Decl., ¶ 6; Smith Decl., ¶7; Houghland Decl., ¶7. DCF

fails to send this correspondence because it does not timely process information from the outside

systems to DCF's own systems. Dkt. #1, ¶63-68, 72-77. In other words, DCF cannot and does

not send adequate pre-termination notice because DCF does not know an individual has lost

Medicaid coverage due to loss of an adoption subsidy or SSI benefits; DCF does not know about

the loss because it does not have sufficient staff or an adequate system in place to process the

information needed to notify them of such.

### C.  Named Plaintiffs and Other Medicaid Recipients Harmed By Defendants' Failures

The facts of named plaintiffs Clayton Harrell and Austin Trueblood are examples of DCF's

system-wide failings. Beginning on December 7, 2010, Clayton Harrell's Medicaid eligibility

---

[7] *Goldberg v. Kelly*, 397 U.S. 254, 268 (1970); s*ee also Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (requiring "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Gray Panthers v. Schweiker*, 652 F.2d 146, 168 (D.C. Cir. 1980) (without adequate notice of reason for denial "hearing serves no purpose"); *Hamby v. Neel*, 368 F.3d 549, 561-62 (6th Cir. 2004) (Medicaid recipients must be provided written notices that adequately advise "of the reasons for denial of their applications, their right to appeal…and the consequences of not appealing and filing new applications."); *Ortiz v. Eichler*, 794 F.2d 889,893-94 (3d Cir. 1986); *Turner v. Walsh*, 574 F.2d 456, 457 (8th Cir. 1978); *Vargas v. Trainor*, 508 F.2d 485, 488-90 (7th Cir. 1974).

derived from an Adoption Assistance Agreement entered into between his mother, Connie Harrell, and Family Support Services of North Florida (FSSNF), an organization that contracts with DCF to provide child welfare services. Harrell Decl, ¶5.  Clayton's Adoption Assistance Agreement ended on July 31, 2019 – the last day of the month of his 18th birthday.  *Id*.

Due to the termination of the Adoption Assistance Agreement, Clayton lost his adoption subsidy; his Medicaid coverage under the agreement also ceased. *Id*.at ¶5-6. Clayton's primary care physician notified Clayton and Clayton's mother of his loss of Medicaid coverage. *Id*.at ¶6. DCF did not provide notice to inform either Clayton or his mother about the termination of his Medicaid eligibility. *Id*. DCF also failed to conduct an *ex parte* review to determine Clayton's eligibility under any other category of Medicaid. Dkt. #1, ¶88.  Had DCF conducted an *ex parte* review, DCF would have determined that due to Clayton's age, household size and income, and his disability, Clayton remains eligible for Medicaid under other Medicaid categories including Family and, possibly, SSI Related Medicaid.[8] *Id.*

Austin Trueblood's experience is similar to Clayton's. From March 1, 2010 to April 30, 2019, Austin derived his Medicaid eligibility from receipt of SSI benefits. Trueblood Decl., ¶5-8. On January 20, 2019, the SSA approved Austin's application for Disabled Adult Child ("DAC") benefits in the amount of $1,405.00 per month. *Id*.at ¶8. Austin's monthly DAC benefit rendered Austin income ineligible for continued receipt of SSI benefits and, on March 1, 2019, the SSA terminated Austin's SSI benefits. *Id*.

Although a notice from AHCA, dated January 28, 2019, stated DCF would determine if Austin "could be covered for Medicaid under another Florida Medicaid program," DCF failed to conduct the *ex parte* review AHCA's notice promised. *Id.* at ¶11. Had DCF conducted an *ex*

---

[8] Family Related and SSI Related Medicaid eligibility categories, in part, are set forth in 42 U.S.C. § 1396a(a)(10)(A)(VI), (l)(1)(D), (l)(2)(C).

*parte* review, it would have determined that, due to Austin's receipt of DAC benefits, he remains eligible for Medicaid under the category of Protected Medicaid and would not have terminated his coverage.[9] Dkt. #1, ¶¶97-98.

While the named Plaintiffs are only two examples of Defendants' failure to provide *ex parte* review and adequate pre-termination notice, they merely represent Defendants' broader unlawful pattern and practices.  Since 2008, Disability Rights Florida ("DRF") has represented, at least 20, individuals whose Medicaid ceased at the time they lost their SSI benefits even though they remained eligible for another category of Medicaid. Panoff Decl, ¶4.  Similarly, since 2015, Jacksonville Area Legal Aid has represented at least ten individuals whose Medicaid eligibility pursuant to an Adoption Assistance Agreement or receipt of SSI benefits ceased and who remained eligible for another category of Medicaid but, instead, were terminated. DeBriere Decl., ¶4.

Shari Sheffield and Nakita Gribble, two former Adoption Assistance Medicaid Recipients who both have significant disabilities, faced the devastating loss of Medicaid coverage because of Defendants' failure to conduct an *ex parte* review of their continued Medicaid eligibility after the termination of their adoption subsidies. On April 18, 2018, in the midst of applying for Florida's Home and Community Based Services Medicaid waiver with the state's Agency for Persons with Disabilities ("APD"), Shari learned her Medicaid benefits were scheduled to end twelve days later, on April 30, 2018. Sheffield Decl., ¶6. She learned this not from DCF, but from an APD employee. *Id.* DCF failed to provide Shari or her mother with any notice about the scheduled termination of Shari's Medicaid benefits. *Id.* Only after counsel in this matter assisted Shari, requesting DCF provide her with written notice of the termination of her Medicaid

---

[9] The Protected Medicaid eligibility category is found at 42 U.S.C. § 1383c(c).

benefits, conduct an *ex parte* review of her continued eligibility, and grant her request for a hearing to challenge the termination of her benefits, did DCF interrupt the scheduled end of Shari's Medicaid coverage and, instead, continue her Medicaid coverage under another eligibility category. *Id.* at ¶8.

Similarly, it was FSSNF, not DCF, who notified Nakita Gribble and her parents that Nakita's Medicaid eligibility would end on May 1, 2017. Gribble Decl., ¶6. As promised by FSSNF, on May 1st, Defendants terminated Nakita's Medicaid without notice or an *ex parte* review. *Id.* at ¶12.  Nakita's parents sought the assistance of legal aid, who was able to have DCF reinstate Nakita's Medicaid. *Id.* at ¶10, 11, 14.

The experiences of Malichi Bell, Miranda Smith, Stanley Moak, Aniyah Wilson, Adam Brockman, Amparo Perales, Harold Thornton, Katelyn Martin, Patricia Houghland, and Linda Patterson -- former SSI recipients with disabilities whose eligibility for Medicaid derived from their receipt of SSI benefits -- also demonstrate Defendants' systemic failures to conduct *ex parte* Medicaid reviews and provide adequate timely written pre-termination notices. *See generally,* Bell Decl.; Smith Decl.; Moak Decl.; Wilson Decl.; Brockman Decl.; Perales Decl.; Thornton Decl.; Martin Decl.; Houghland Dec.; and Patterson Decl.

On October 18, 2018, Malichi's mother, Christina Bell, learned from the SSA that Malichi's SSI benefits would end. Bell Decl., ¶6. When Christina called AHCA, AHCA informed Christina that Malichi's Medicaid benefits would continue despite the loss of his SSI benefits. *Id.* at ¶7. However, on January 1, 2019, when Christina attempted to fill a prescription, she learned Malichi, who is medically fragile, lost his Medicaid coverage completely. *Id.* at ¶8. DCF never provided Malichi or his mother notice of Malichi's Medicaid termination. *Id.*at ¶9. Only after

legal services intervened on behalf of Malichi did DCF finally conduct an *ex parte* review of his eligibility and ultimately reinstate his health care coverage. *Id.* at ¶11-12.

Diane Martin was an individual diagnosed with an intellectual disability and mental illness who passed away in March 2011. Thornton Decl., ¶4. Like Malichi, Defendants terminated her Medicaid coverage after she lost her SSI benefits. *Id.* at ¶6. Defendants never conducted an *ex parte* review of Diane's continued Medicaid eligibility or sent any notice of termination. *Id.* at ¶7-8. Due to Defendant's failures, Diane experienced extreme hardship; she was discharged from her Assisted Living Facility and institutionalized for several months before she located a new home. *Id.* at ¶9, 12.

DCF's failure to provide an *ex parte* review and notice to those who lose Medicaid coverage pursuant to receipt of an adoption subsidy or SSI benefits occur so often that case managers for Medicaid eligible individuals adapt their business practices to curtail its effect. Declarants Ryan Chandler and Marty Lyons operate businesses that provide case management services to persons enrolled on APD's Medicaid Waiver. Chandler Decl., ¶3; Lyons Decl., ¶3. Both Mr. Chandler and Ms. Lyons state that Defendants have repeatedly terminated their customers from Medicaid, without notice, when their customers lose an adoption subsidy or SSI benefits. Chandler Decl., ¶7-9; Lyons Decl., ¶7-9. Mr. Chandler and Ms. Lyons see the problem so often they either ask their customers at intake whether they are likely to lose SSI benefits in the near future (due to an increase in benefits based on a parents' Social Security record) or they run a Medicaid eligibility report early in the month to catch whether a customer has been erroneously terminated. Chandler Decl., ¶9; Lyons Decl., ¶9-10. Since DCF does not send notice when terminating Medicaid under these circumstances, Mr. Chandler and Ms. Lyons have to be especially proactive in ensuring their customers do not experience an erroneous lapse of Medicaid. *Id.* As demonstrated by the

13

numerous declarations submitted in support of this motion, Defendants' fail on a system-wide basis to protect the rights of class members to *ex parte* reviews and timely, adequate notice.

## IV.   ARGUMENT

### A.   THE CLASS REPRESENTATIVES HAVE STANDING TO BRING CLAIMS

Prior to conducting the Rule 23 analysis for class certification, a district court must determine that at least one named class representative has Article III standing to bring each claim. *Murray v. Auslander,* 244 F.3d 807, 810-11 (11th Cir. 2001); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000); *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987); *Hernandez v. Medows*, 209 F.R.D. 665, 667 (S.D. Fla. 2002). To satisfy standing, a plaintiff must have suffered an "injury in fact" or "an invasion of a legally protected interest which is . . . concrete and particularized." *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1272 (11th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Additionally, a plaintiff must "allege and show that he personally suffered injury." *Griffin*, 823 F.2d at 1482 (citing *Payne v. Travenol Laboratories, Inc.*, 565 F.2d. 895, 898 (5th Cir. 1978)). It is not sufficient for a plaintiff to allege that the defendant's conduct "will injure *someone*," as "[t]he complaining party must also show that he is within the class of persons who will be concretely affected." *Griffin*, 823 F.2d at 1483 (emphasis in original) (internal citations omitted).

The class representatives have standing to bring this class action against the Defendant. As set forth in his Declaration, Clayton Harrell is an 18-year-old former foster care child who has been diagnosed with multiple physical and behavioral health conditions. Harrell Decl., ¶4.  In order to manage these conditions and maintain his health and well-being, Clayton relies critically on Medicaid coverage derived from an Adoption Assistance Agreement. *Id.* at ¶4,7. Upon the expiration of the Adoption Assistance Agreement on his eighteenth birthday, Clayton's Medicaid

coverage was terminated without notice. *Id.* at ¶5-6. He can no longer access critical medical

services. *Id.* at ¶7. Clayton is suffering an injury due to DCF's failure to provide prior written

notice of termination of his benefits, to conduct an *ex parte* review to determine his eligibility

under another category of Medicaid, and to provide any notice to him about the outcome of an *ex*

*parte* review, the availability of a hearing to contest an unfavorable outcome, and that his

benefits may continue during the pendency of such hearing. *Murray*, 244 F.3d at 810-11; *Focus*

*on the Family*, 344 F.3d at 1272; *Griffin*, 823 F.2d at 1482-83.

Similarly, Austin Trueblood was injured by DCF's failure to conduct an *ex parte* review of

his continued Medicaid eligibility when his SSI benefits were terminated. Although AHCA sent

Austin a letter informing him DCF would conduct such a review, DCF ultimately failed to do so.

Trueblood Decl., ¶9.  As a result, Austin lost his Medicaid coverage. *Id.* at ¶10. Furthermore,

DCF failed to provide him with a pre-termination notice, thereby depriving Austin of the

opportunity to challenge the termination of his benefits and the option to continue those benefits

pending the final outcome of an appeal. *Id.* at ¶9,11; *Murray*, 244 F.3d at 810-11; *Focus on the*

*Family*, 344 F.3d at 1272; *Griffin*, 823 F.2d at 1482-83.

## B.     THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23 AND SHOULD BE CERTIFIED

Under Rule 23 of the Federal Rules of Civil Procedure, class certification is appropriate

when (1) the threshold requirements of Rule 23(a) are satisfied and (2) one of the three

requirements under Rule 23(b) has been met. Fed. R. Civ. P. 23; *see also DWFII Corp. v. State*

*Farm Mut. Auto. Ins. Co.*, 469 Fed. Appx. 762, 764 (11th Cir. 2012). Additionally, the Eleventh

Circuit requires "ascertainability" of class members as "implicit in the analysis" of Rule 23(a).

*Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 Fed. Appx. 782, 787 (11th Cir. 2014).

### 1.      The Proposed Class Meets the Requirements of Rule 23(a)

Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Karhu v. Vital Pharms., Inc.*, 621 Fed. Appx. 945, 946 (11th Cir. 2015); *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir 2003). Plaintiffs readily satisfy these criteria.

### a.    The Proposed Class Satisfies the Numerosity Requirement.

The numerosity requirement of Rule 23(a)(1) is satisfied when "the class is so numerous that joinder of all of its members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement imposes a "generally low hurdle." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). "[A] plaintiff…bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement," , and "[a]lthough mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." *Id.* (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983)). In the 11th Circuit, "the general rule of thumb…is that 'less than twenty-one is inadequate, more than forty adequate . . . ." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (quoting *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

The proposed class easily satisfies the numerosity requirement. In May 2019 alone, 2,479 individuals were terminated from SSI and 993 individuals were terminated from Adoption Assistance, all of whom could be members of the proposed class. DeBriere Decl., ¶3, Ex. 8 & 9. Since 2014, the organizations representing Plaintiffs and the putative class members in this matter have represented many individuals whose Medicaid benefits were terminated without

DCF having conducted an *ex parte* review. Panoff Decl., ¶3-5; DeBriere Decl., ¶4-6. Medicaid case managers like Ryan Chandler and Marty Lyons modify their business practices because of the number of clients they have seen terminated from Medicaid without notice after the loss of an adoption subsidy or SSI benefits. *See generally,* Chandler Decl. & Lyons Decl. Defendants' pattern and practice is, in part, the result of DCF's failure to timely process data exchanges. Dkt. #1, ¶63-68, 72077. As of November 29, 2017, DCF had not processed 650,131 data exchanges. DeBriere Decl., ¶3, Ex. 5 at 2. By any definition, the thousands of low-income Floridians included within the proposed class satisfy the numerosity requirement. *Vega*, 564 F.3d at 1267; *Manno*, 289 F.R.D. at 684.

**b.      The Proposed Class Satisfies the Commonality Requirement**

The commonality requirement is satisfied when "questions of law or fact common to the class" are present. Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) "does not require that all questions of law or fact raised in the litigation be common; indeed even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 368-69 (2011); *see also Bussey*, 562 Fed. Appx. at 788-89. More specifically, in order to satisfy the commonality requirement, class members' claims must "depend upon a common contention" "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. The relevant inquiry is whether a class action can "generat[e] common answers apt to drive the resolution of the litigation." *Id*. The commonality requirement is "generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 668 (S.D. Fla. 2015) (internal citations and quotations

omitted); *see also*, *Ioime v. Blanchard, Merriam, Adel & Kirkland, P.A.*, 2016 U.S. Dist. LEXIS 27265, *6 (M.D. Fla. March 3, 2016) (*citing Wal-Mart Stores, Inc.*, 564 U.S. 338) (finding that "[c]ommonality may be demonstrated by proof that the defendant operated under a general policy that manifested itself in the alleged illegal practices affecting the class members in the same general fashion.").

The proposed class here satisfies the commonality requirement. All members of the proposed class have suffered or will soon suffer the same harms: namely, the deprivation of Medicaid benefits without an *ex parte* determination of continued eligibility for Medicaid independent of eligibility for SSI or adoption assistance-related Medicaid, without timely and adequate notice regarding the complete termination of Medicaid benefits, and without an opportunity for a hearing to challenge the complete termination of Medicaid benefits including aid paid pending the outcome of an appeal. Dkt. #1, ¶17-19. These shared harms all stem from a central decision maker, the Defendants, and their central pattern and practice of failing to provide *ex parte* reviews and timely, adequate notice. *Id.* at ¶38-60, 63-77. Plaintiffs have alleged that "defendants have engaged in a standardized course of conduct that affects all class members." *Id.*; *In re Checking Account Overdraft Litig.*, 307 F.R.D. at 668. This Court's determination of Plaintiffs' allegations "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Walmart Stores*, 564 U.S. at 350. Therefore, class certification is appropriate inasmuch as Plaintiffs have the met the requirement of commonality.

### c.       The Proposed Class Satisfies the Typicality Requirement

The typicality requirement is satisfied when the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see also Williams v. Mohawk Indust.*, 568 F.3d 1350, 1355 (11th Cir. 2009). The typicality requirement

may be satisfied "despite substantial factual differences" when there exists a "strong similarity of legal theories." *Murray*, 244 F.3d at 811. "Class members' claims need not be identical . . . rather, there need only exist 'a sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification.'"[10] *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting *Prado-Steiman*, 221 F.3d at 1278–79); *see also Hines*, 334 F.3d at 1255-56. "This nexus exists 'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Ault*, 692 F. 3d at 1216 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)); *see also Williams*, 568 F.3d at 1357. In other words, "[a] class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Id.* at 1357 (quoting *Murray*, 244 F.3d at 811). However, class representatives are not rendered atypical merely because they may have suffered more serious harm than other class members. *Kornberg*, 741 F.2d at 1337.

The named Plaintiffs satisfy the typicality requirements. The named class representatives have suffered the same harm as each of the proposed absent class members. *Williams*, 568 F.3d at 1357. The named class representatives have lost or will lose Medicaid benefits without DCF: (1) assigning them to another Medicaid category without interruption of their eligibility or, (2) where DCF finds no grounds for their continued eligibility, providing notice and opportunity for a hearing, including the opportunity to continue benefits pending outcome of his appeal. Dkt. #1, ¶17-19; Harrell Decl., ¶5, 6, 8; Trueblood Decl., ¶9-12. Furthermore, the claims of the class and the

---

[10] Courts have found that "the commonality and typicality requirements of Rule 23(a) overlap. Both requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Prado-Steiman*, 221 F.3d at 1278; *see also Hudson v. Delta Air Lines*, 90 F.3d 451, 456 (11th Cir. 1996). However, the two requirements remain distinct, and "[t]raditionally, commonality refers to the group characteristics of the class as a whole and typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Prado-Steiman*, 221 F.3d at 1279.

class representatives all arise from Defendants' pattern and practice of failing to abide by their obligations under federal Medicaid law to conduct *ex parte* reviews on behalf of individuals whose Medicaid coverage is terminated after loss of an adoption subsidy or SSI benefits and Defendants' further failure to provide timely notice to these individuals in violation of both federal Medicaid law and the Fourteenth Amendment. Dkt. #1, ¶17-19; 63-77. *See Ault*, 692 F. 3d at 1216 (typicality is present when "the claims or defenses of the class and. . .representative[s] arise from the same event or pattern or practice and are based on the same legal theory."). The claims of the class representatives are thus typical because there is not only a sufficient – but strong – nexus between their claims and those of the proposed class. *See Prado-Steiman*, 221 F.3d at 1279.

### d. The Proposed Class is Adequately Represented

Finally, Plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent," and class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal quotations and citations omitted)); *see also London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003).

In the Eleventh Circuit, the adequacy of representation analysis "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citing *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 460–61 (N.D. Ala. 2003)); *see also Pickett v. Iowa Beef*

*Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) (stating that "a class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class."). The class representatives must "possess the same interest and suffer the same injury as class members." *Amchem Prods., Inc.*, 521 U.S. at 594-95 (internal quotations and citations omitted). Additionally, "the adequacy-of-representation requirement 'tends to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether…maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* at 626, n.20 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, n.13 (1982)).

Here, the final requirement of Rule 23(a) is satisfied. There is no conflict of interest between the class representatives and the absent class members because the class members interests in having their rights under federal Medicaid law and the Due Process Clause of the Fourteenth Amendment protected do not interfere with or oppose one another. *Pickett*, 209 F. 3d at 1280; *Valley Drug Co.*, 350 F. 3d at 1189. Each and every class member seeks to have their right to an *ex parte* review vindicated – a right that is not contingent on other class members having their own right to an *ex parte* review vindicated. Dkt. #1, ¶16-19, 99-103; *Id.*; *see also*, *Amchem Prods., Inc.*, 521 U.S. at 625-26. One class member's continued or reinstated Medicaid eligibility will not impact another's nor will the member's receipt of timely and adequate notice. *Id.*

Furthermore, as argued *supra* at pages 18-21, the commonality and typicality requirements of Rule 23(a) are satisfied. While the satisfaction of the commonality and typicality requirements are not sufficient on their own to satisfy the separate adequacy or representation requirement, the two other factors do provide a strong indication that "the class claims are so interrelated that the

interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc*, 521 U.S. at 626, n.20 (citing *Gen. Tel. Co. of Sw.*, 457 U.S. at 157, n.13).

Adequacy is also met because class counsel are competent to represent the interests of the class. *Valley Drug Co.,* 350 F.3d. at 1189. The undersigned counsel all have experience litigating public benefits class actions in Florida's Federal District Courts. Thus, Plaintiffs' counsel will adequately prosecute this action. Dkt. #1; ¶18.

## 2.     The Proposed Class Meets the Eleventh Circuit's "Ascertainability" Requirement

The Eleventh Circuit imposes an additional requirement to the four factors specifically listed in Rule 23(a). Classes seeking certification in the Eleventh Circuit must also demonstrate that "the proposed class is adequately defined and clearly ascertainable." *Karhu*, 621 Fed. Appx. at 946 (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)). To meet ascertainability, the class definition must contain "objective criteria" that are "administratively feasible. . .[which] means 'that identifying class members is a manageable process that does not require much, if any, individual inquiry.'" *Bussey*, 562 Fed. Appx. at 787. It is not enough for a plaintiff to "simply…[assert] that class members can be identified using the defendant's records; the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible." *Karhu*, 621 Fed. Appx. at 948 (citing *Stalley v. ADS Alliance Data Syst., Inc.*, 296 F.R.D. 670, 679–80 (M.D. Fla. 2013)).

The proposed class satisfies the implicit ascertainability requirement to the class certification analysis. As previously stated, the class is made up of two subclasses whose Medicaid eligibility ended without DCF having provided one or more of the following: (a) an *ex parte* determination of continued eligibility for Medicaid, independent of eligibility for SSI or adoption assistance Medicaid; (b) timely, adequate notice regarding the complete termination of their Medicaid

22

eligibility; (c) an opportunity for a hearing to challenge the termination of their Medicaid eligibility including aid paid pending the outcome of an appeal. Dkt. #1, ¶17-18.

Defendants can ascertain members of the proposed Subclass One by reviewing current recipients of Adoption Assistance Agreements that are scheduled to end in the near future, establishing a system that ensures these recipients receive an *ex parte* review of their Medicaid eligibility as well as providing timely, written pre-termination notice where applicable. Furthermore, the identities of proposed Subclass Two members can be ascertained through Defendant following its own policy of conducting *ex parte* reviews, including reviewing reports of SSI terminations in order to determine which individuals require DCF to conduct an *ex parte* review, undertaking such review without interruption of health care coverage for the individuals, and sending timely pre-termination notice if necessary. Finally, Defendants may ascertain proposed class members by taking steps needed to process data exchanges. The proposed class is therefore well-defined and ascertainable.

### 3. The Proposed Class Satisfies Rule 23(b)(2)

In addition to satisfying the four requirements of Rule 23(a) and the implicit ascertainability requirement, proponents of a proposed class must satisfy one of the three conditions listed in Rule 23(b). Fed. R. Civ. P. 23(b); *see also Cooper v. Southern Co.*, 390 F.3d 695, 720 (11th Cir. 2004); *Ault v. Walt Disney World Co.*, 254 F.R.D. 680, 685 (M.D. Fla. 2009). Rule 23(b)(2) is satisfied when the Defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Wal-Mart Stores, Inc.*, 564 U.S. at 360. Class certification pursuant to Rule 23(b)(2) is "appropriate only if 'the predominant relief sought is injunctive or declaratory.'" *DWFII Corp.*, 469 Fed. Appx. at 765 (quoting *Murray*, 244

F.3d at 812). In assessing whether Rule 23 (b)(2) is met, the court evaluates whether the requested relief "run[s] to the benefit of not only the named plaintiffs, but also to all those similarly situated." *Ault*, 254 F.R.D. at 687–88.

Here, Defendants, in violation of federal law, have failed to ensure that Medicaid recipients receive *ex parte* reviews upon the termination of SSI- or adoption assistance-related benefits thereby causing the unlawful termination of class members Medicaid eligibility. Dkt. #1, ¶63-98. The class representatives and class members have suffered or will suffer from the loss of essential health benefits and will, consequently, lack access to health care necessary to manage their medical conditions. Dkt. #1, ¶17-19, 72-77; Harrell Decl. ¶7; Trueblood Decl. 12; *see Ault*, 254 F.R.D. at 687. These harms result from Defendant's policies and practices of not only failing to conduct *ex parte* reviews but also, where Defendant finds no continued eligibility, failing to provide class members with adequate, timely notice of termination. Plaintiffs seek declaratory and injunctive relief to remedy these constitutional and federal statutory violations for all similarly situated members of the proposed class; they do not seek monetary damages. Dkt. #1; *see Ault*, 254 F.R.D. at 688. Thus, the current action, which can only be resolved through injunctive relief, is precisely the scenario for which Rule 23(b)(2) was intended.

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed class, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Respectfully submitted this 7th day of August, 2019.

Plaintiffs by their Attorneys,

*/s/ Katy DeBriere*

Katherine DeBriere
Trial Counsel
Fla. Bar No.: 58506

Florida Health Justice Project, Inc.
126 W. Adams Street
Jacksonville, FL 32202
Telephone: (904) 356-8371, ext. 333
Facsimile: (904) 356-8780
debriere@floridahealthjustice.org

DISABILITY RIGHTS FLORIDA

Amanda E. Heystek, Esq.                    Rachel Siegel-McLaughlin, Esq.
Fla. Bar. No.:  0285020                    Fla. Bar. No.: 116253
1000 N. Ashley Dr., Suite 640              2473 Care Dr., Ste. 200
Tampa, FL 33602                            Tallahassee, FL 32308-9803
Telephone:  (850) 488-9071, ext. 9762      Telephone: (850) 488-9071, ext. 9743
Facsimile:  (859) 488-8640                 Facsimile:  (850) 488-8640
amandah@disabilityrightsflorida.org        rachels@dsiabilityrightsflorida.org

NATIONAL CENTER FOR LAW & ECONOMIC JUSTICE, INC.
Marc Cohan*
275 Seventh Avenue, Suite 1506
New York, NY 10001
Telephone: (212) 633-6967
cohan@nclej.org

## CERTIFICATE OF SERVICE

I certify that this document is being served by process server along with the summons in

this action.

Dated:  August 7, 2019                     Respectfully submitted,

                                           /s/*Katy DeBriere*_____

*Pursuant to Local Rule 2.02 of the Middle District of Florida

25